MARONEN et al., Appellants, *v.* ANACONDA COPPER MINING CO., Respondent.

(No. 3,269.)

(Submitted October 24, 1913. Decided November 24, 1913.)

[136 Pac. 968.]

*Master and Servant—Mines and Mining—Personal Injuries—Death—Nature of Right of Action—Safety Cage Act—Defenses—Duty of Master—Statutes.*

Mines and Mining—Personal Injuries—Death—Nature of Right of Action.
  1. *Held* that, since the right of action given by section 6486, Revised Codes, to the heirs or personal representatives of one whose death was caused by the wrongful act of another, though distinct from that which the deceased would have had in case he had only been injured, is the same in character and dependent upon the same facts, the heirs of a miner who himself was responsible for his death because of his violation of a rule of defendant company requiring him to close the doors of a safety cage while being hoisted to the surface, were barred of recovery; deceased could not have maintained the action because of his contributory negligence, and therefore his heirs cannot do so.

  [As to the duty of mine owners to prevent injury to their employees, see note in 87 Am. St. Rep. 557. As to the liability of a mine owner for injuries to an employee caused by a falling roof, see note in Ann. Cas. 1912B, 577.]

Same—Safety Cage Act—Negligence—Defenses.

    2.   In an action in which damages were sought to be recovered for the death of a mine employee, charged to have been due to legal negligence of defendant in attempting to hoist him to the surface of the mine in a cage the doors of which had not been closed as provided in the Safety Cage Act (Rev. Codes, sec. 8536), defendant was not, because of the fact that the statute makes omission in this respect punishable by a fine, limited to those defenses available in a criminal action, but could plead any of the defenses ordinarily interposed in negligence cases.

Same—Actions—Common Law—Abolition of Forms—Statutory Construction.

    3.   While the common-law forms of action have been abolished in Montana, the principles underlying them have not been changed, and a reference to both such forms and principles is frequently of aid in the construction of statutes.

Same—General Findings—Effect.

    4.   In a personal injury action tried by the court without the aid of a jury, a general finding in favor of defendant company is equivalent to a finding in its favor upon every issue necessary to support the judgment.

Same—Safety Cage Act—Duty of Master—Statutes.

    5.   *Held,* that the provision of section 8536, Revised Codes, requiring that the doors of the cages used in shafts of deep mines must be closed when lowering or hoisting the men, was not intended to make it obligatory upon mine operators. to employ a station-tender at each station to open and close the cage doors, where only a small number of miners is engaged in active mining, and does not prohibit, either expressly or impliedly, the imposition of the duty of opening and closing them upon a miner, provided he be capable, understands the method pursued in fulfilling the additional requirement and is not encumbered with work which would interfere with its discharge.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Flora Maronen and others against the Anaconda Copper Mining Company.   From a judgment for defendant and an order denying a motion for new trial, plaintiffs appeal. Affirmed.

*Messrs. Maury, Templeman & Davies,* for Appellants, submitted a brief and one in reply to that of defendant; *Mr. John O. Davies* argued the cause orally.

The complaint in this case states a cause of action in favor of the plaintiffs and against the defendant.   The action is based upon section 8536 of the Revised Codes.   A violation of the provisions of the section is a wrongful and unlawful act.   It is a

crime.   The committing of a crime in this state is both a wrongful and unlawful act.   (Sec. 5051.)   Section 6486 gives to these plaintiffs a right of action against the defendant for causing the death of their husband and father, respectively, for any wrongful or unlawful act.   Section 6040 says that "Every person who suffers detriment from the unlawful act or omission of another may recover from the person a full compensation therefor in money, which is called damages."   The fact that a penalty is attached to the violation of section 8536, and that the violation of it is made a crime, does not preclude the person injured by reason of the violation from bringing an action to recover damages for the injuries which he sustained.   (Secs. 8089, 8101.) The courts allow the injured person to recover for injuries received by reason of the violation of a statute enacted for the protection of such person, unless they can from the language of the statute read a specific intent upon the part of the legislature to exclude any right of action except the one given by the statute; and unless the penalty prescribed by the statute is given to the person injured, the court will not read into it, any such specific intent on the part of the legislature.   (*Groves* v. *Wimborne,* 2 Q. B. (1898)  402; *Fahey* v. *Jephocott,* 2 Ont. Law Rep. 449, 1 Brit. Rul. Cas. 616; *Stehle* v. *Jaeger Automatic Mach. Co.,* 220 Pa. 617, 14 Ann. Cas. 122, 69 Atl. 1116; *Wolf* v. *Smith,* 149 Ala. 157, 9 L. R. A. (n. s.) 338, 42 South. 824.)

.   The failure of the defendant to comply with the terms of section 8536, and close the doors on its cages when it was lowering or hoisting men, makes it liable.   (*Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Chicago B. & Q. Ry. Co.* v. *United States,* 220 U. S. 559, 55 L. Ed. 582, 31 Sup. Ct. Rep. 612; *Luken* v. *Lake Shore etc. Ry. Co.,* 248 Ill. 377, 140 Am. St. Rep. 220, 21 Ann. Cas. 82, 94 N. E. 175; *Glucina* v. *F. H. Goss Brick Co.,* 63 Wash. 401, 42 L. R. A. (n. s.) 624, 115 Pac. 843.)   This being so, in an action of this kind it is not necessary to charge negligence; an action may be brought directly upon the statute for a breach of its provisions.   (*Monson* v. *La France Copper Co., supra; Groves* v. *Wimborne, supra.)*

Are any of the defenses set out in the answer sufficient to constitute a bar to plaintiffs' cause of action as alleged in their complaint? In considering this question, we wish the court to bear in mind that this is not an action based upon negligence. No negligence is charged in the complaint. The defendant is charged with the commission of a crime, a wrongful and unlawful act, from which directly and proximately resulted the death of August Maronen. In fact, the complaint in this case charges the defendant with manslaughter, or criminal homicide. (*State* v. *Crean,* 43 Mont. 47, 114 Pac. 603; sec. 8295, Rev. Codes.) The only defenses permitted by our Code of manslaughter or homicide are that the homicide must be either excusable or justifiable, as defined by sections 8299, 8300, 8301. We submit that no defense not found within these sections should be permitted to be set up by the defendant as a defense to this action; and that the provisions found in them are as applicable to civil actions for criminal homicide as they are to criminal prosecutions. The first defense found in the answer is assumption of risk. This court has committed itself to the proposition that assumption of risk rests upon the common-law maxim of *volenti non fit injuria:* that one who consents to an act will not be heard to say that he was injured thereby. The law will not permit a man to consent to an unlawful act. No man can consent that another commit an unlawful act against him. (*Adams* v. *Waggoner,* 33 Ind. 531, 5 Am. Rep. 230; *Miller* v. *Bayer,* 94 Wis. 123, 68 N. W. 869; *Thomas* v. *Riley,* 114 Ill. App. 520; *Engelhardt* v. *State,* 88 Ala. 100, 7 South. 154; *Morris* v. *Miller,* 83 Neb. 218, 131 Am. St. Rep. 636, 17 Ann. Cas. 1047, 20 L. R. A. (n. s.) 907, 119 N. W. 458; *Shay* v. *Thompson,* 59 Wis. 540, 48 Am. Rep. 538, 18 N. W. 473; *Grotton* v. *Glidden,* 84 Me. 589, 30 Am. St. Rep. 413, 24 Atl. 1008; *Miller* v. *Bayer,* 94 Wis. 123, 68 N. W. 869.)

The plea of contributory negligence, defendant's second defense, is not available. This plea is one of confession and avoidance. It necessarily assumes negligence upon the defendant's part, and where there is no negligence upon the defendant's part there can be no contributory negligence upon the plaintiff's

part.   (*Birsch* v. *Citizens' Elec. Co.,* 36 Mont. 547, 93 Pac. 940;
*Ohio Handle etc. Co.* v. *Jones,* 98 Ark. 17, 135 S. W. 455;
*Linforth* v. *San Francisco Gas etc. Co.,* 156 Cal. 58, 19 Ann. Cas.
1230, 103 Pac. 320; *Wright* v. *Southern Ry. Co.,* 155 N. C. 325,
71 S. E. 306.)   Negligence and contributory negligence both
have been universally defined as meaning inadvertence in re-
spect to the conduct of the person charged with negligence or
contributory negligence.   Inadvertence is no excuse or offset for
a public offense, for a crime, for willful injury, for willful or
wanton conduct, or criminal negligence, or for gross negligence,
or for any breach of duty which is of a higher nature than simple
inadvertence or negligence.   (*Hawks* v. *Slusher,* 55 Or. 1, Ann.
Cas. 1912A, 491, 104 Pac. 883; *Aiken* v. *Holyoke St. R. Co.,* 184
Mass. 269, 68 N. E. 238; *Matthews* v. *Warner,* 29 Gratt. (Va.)
570, 26 Am. Rep. 396.)

Defendant's third defense is based upon negligence of fellow-
servants.   If there was any duty devolving upon any of the
fellow-servants of Maronen to close the doors, that duty was a
nondelegable duty, and any negligence upon the part of such
fellow-servants was the negligence of the master, and the master
is responsible.   (*Monson* v. *La France Copper Co., supra.*)

As to each of the questions of law above discussed, we desire
to call the court's particular attention to the case of *Groves* v.
*Wimborne, supra.*   This case more closely resembles the present
one than any other case which the writer has been able to find.
It discusses all three of the questions above considered and
reaches the same conclusions which is contended for above.

*Messrs. C. F. Kelley, L. O. Evans, W. B. Rodgers* and *D. Gay
Stivers,* for Respondent, submitted a brief; *Mr. Evans* argued
the cause orally.

The complaint fails to state a cause of action.   It does not
plead, and it is stated by counsel that the omission to do so is
intentional, that the act of hoisting plaintiff's decedent upon the
cage in question without the gates being closed was negligently
done, and, in short, neither the term "negligent" or any equiva-

lent for it is anywhere used in the complaint in connection with the acts or omissions of the defendant relied upon to support the action, although the term "wrongful" and "unlawful" are used. Under the facts set forth in the complaint, it is negligence alone on the part of the defendant which must be relied upon to support the action. Negligence or its equivalent must. be directly averred, or such facts must be stated as that a presumption of negligence necessarily arises. It is sufficient that the acts complained of be alleged, coupled with an allegation that the same were negligently done, but anything short of this seems to be insufficient under the authorities. (*Bralley* v. *Norfolk & W. Ry. Co.*, 66 W. Va. 462, 66 S. E. 653; *Forquer* v. *North*, 42 Mont. 272, 112 Pac. 439; *Wyler* v. *Ratican*, 150 Mo. App. 474, 131 S. W. 155; *Anderson* v. *Western Union Tel. Co.*, 85 S. C. 252, 67 S. E. 232, 477; *Silvera* v. *Iverson*, 125 Cal. 266, 57 Pac. 996.)

The evidence shows that the cage in question had been properly encased in steel, furnished with permanent doors of solid steel casing as required by law, the doors were in place and in good working order at the time of the accident. These doors obviously cannot be kept closed, but must be continuously opened and closed by the employees as they proceed with their work. The duty that was intended to be imposed as a primary duty upon the defendant was done in this case. All that the legislature can be reasonably presumed to have required the employer to do was to properly equip the cages, see that the doors were on and in proper working condition, and employ competent employees. If in carrying out the details of the work the employee failed in his simple duty, it certainly was not the intention to impose any criminal penalty on the employer. (*Manning* v. *App Con. Gold Min. Co.*, 149 Cal. 35, 84 Pac. 657; *Richardson* v. *El Paso Con. Gold Min. Co.*, 51 Colo. 440, 118 Pac. 982.)

The construction of this statute upon this proposition has never, to our knowledge, been directly submitted to or passed upon by this court. The statute, of course, requires that the doors be closed, when lowering or hoisting men. Upon failure to so close the doors, there is necessarily a violation of the Act

by someone, but, we submit, a reasonable view of the Act will not carry this criminal responsibility past the direct violator to the employer, who has done everything to comply with the law that in reason could be asked.

But counsel contend that because in the complaint in this action the acts of the defendant complained of are not designated as having been negligent, a different case is presented from the *Osterholm Case* (40 Mont. 508, 107 Pac. 499). In this case, the claim is made that the defendant is liable because it had failed to comply with the Safety Cage Act. In the *Osterholm Case,* the charge was also that the defendant had failed to comply with the terms of the Act. If the defendant in this case cannot be held responsible because of its negligence, which would be determined and measured by the fact that it had not complied with the statute, then it certainly cannot be held responsible at all, because no proposition of law could be laid down more clearly than this court in the *Osterholm Case* laid down the law that no new right of action was given plaintiff; nor were any of its common-law defenses taken away by the Act, its sole effect upon the civil action being to establish the question of primary negligence. Counsel's contention that a different situation is presented because this action is not brought upon the theory of negligence, but is based upon a wrongful act or crime of the defendant, has also been disposed of in the recent case of *Melville* v. *Butte-Balaklava Copper Co.*, 47 Mont. 1, 130 Pac. 441. That case, while based upon an alleged violation of the penal Act known as "the eight-hour law," was otherwise and in theory exactly the same as this, the complaint not alleging in terms that the defendant's acts were negligent, but that they were wrongful and unlawful.

The evidence showed that it was the duty of Maronen and his fellow-servants, particularly of Maronen because of his getting first upon the cage, to close the gates upon the north side, the side from which he afterward fell. Where a duty incumbent upon a master is intrusted to a servant and made a part of the duties of his employment, the failure to perform such duty on

the part of the servant cannot be charged by such servant as negligence on the part of the master. The sole and primary negligence is that of the servant. In this case, not alone was it Maronen's duty under the general custom and rule prevailing in the mine at the time of the accident, and clearly a part of the general duties of his employment, but the proof shows that he had been but a short time before positively and definitely ordered, to close the gates on the cage before riding upon the same. The person upon whom was devolved the duty to perform the act required could not fail in this duty and then complain of the master. (*Junior* v. *Missouri Electric L. & Power Co.*, 127 Mo. 79, 29 S. W. 988; *Carr* v. *Manchester Electric Co.*, 70 N. H. 308, 48 Atl. 286; *Memphis & C. R. Co.* v. *Graham*, 94 Ala. 545, 10 South. 283; *Chicago & N. W. R. Co.* v. *Snyder*, 117 Ill. 375, 7 N. E. 604.) The last case above cited is one where the duty which the servant failed to perform was an act required by a penal statute, and the case is thus similar to the present case. See *Guenther* v. *Lockhart*, 61 Hun, 624, 16 N. Y. Supp. 717, a case based upon the failure of an employer to furnish safety doors, as required by a penal elevator Act. For further authorities denying servants the right to recover, where the servants themselves had failed to perform their duties in taking specific measures to make the work or place safe, see *Conroy* v. *Clinton*, 158 Mass. 318, 33 N. E. 525; *Martin* v. *Louisville & N. R. Co.*, 23 Ky. Law Rep. 798, 64 S. W. 417; *Hogan* v. *Field*, 44 Hun (N. Y.), 72; *Watts* v. *Boston Tow Boat Co.*, 161 Mass. 378, 37 N. E. 197; *Preston* v. *Ocean Steamship Co.*, 33 App. Div. 193, 53 N. Y. Supp. 444.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The plaintiffs are, respectively, the surviving children and widow of August Maronen, deceased, and prosecute this action for damages on account of the death of the father and husband by the alleged wrongful act of the defendant. The complaint recites the relationship of the plaintiffs to the deceased and al-

leges that on September 7, 1911, August Maronen· was an employee of the defendant company engaged in underground mining; that the company was carrying on mining operations through the Mollie Murphy shaft, a vertical shaft, more than 300 feet deep; that while in the discharge of his duties as such employee, and while at the 1,200-foot level in the shaft, he entered one of the defendant's mining cages for the purpose of being hoisted to the surface; that the defendant hoisted him from the 1,200-foot level to about the 1,000-foot level in the shaft when Maronen fell from the cage, receiving injuries from which he died. The gravamen of the charge is that the defendant hoisted Maronen without having closed the cage doors, and because of this fact alone the accident occurred. The act or omission is charged to have been wrongful and unlawful.

The answer admits the employment and the operations of the defendant company through the Mollie Murphy shaft; that while being hoisted through that shaft and at about the 1,000-foot level, and while the cage doors were not closed, Maronen fell from the cage, receiving the injuries from which he died, and that if the doors had been closed he would not have fallen from the cage. All other allegations of the complaint are denied; and in addition the defendant pleaded assumption of risk, negligence of fellow-servants, and that the decedent's death was due to his own fault, neglect, and disobedience of orders. These affirmative allegations were traversed by reply, and the cause, being at issue, was tried to the court without a jury and resulted in a judgment for defendant, from which judgment and an order denying them a new trial the plaintiffs prosecute these appeals.

The complaint charges the defendant with violating section 8536, Revised Codes, which makes it unlawful for any person or corporation to carry on mining operations through a vertical shaft more than 300 feet deep, unless the shaft is equipped with a safety cage with steel doors, and said doors "must be closed when lowering or hoisting the men," except that when sinking

only the doors need not be used. For a violation of any of the provisions of the section a penalty is prescribed.

Practically all of appellants' preliminary hypotheses may be conceded at once, in substance if not in the form in which they are expressed, *viz.:* That section 8536 is a penal statute and its violation is a crime; that section 6486, Revised Codes, gives to these plaintiffs a right of action against this defendant, provided the defendant's wrongful act or neglect was a proximate cause of August Maronen's death; that the fact that a penalty is attached to a violation of section 8536 does not render the defendant immune from civil liability; and that the duty to close the cage doors when men are being lowered or hoisted is an absolute one, in the sense that the employer will not be heard to say that by the exercise of ordinary care he cannot comply with the requirement. The foregoing questions aside, and we are brought to a consideration of the character of this action and, as an incident thereof, the defenses, if any, which are available.

There is not any contention made that the defendant company had not fully complied with the law in providing and properly equipping the cage in use. The only charge of wrongdoing is in failing to close the cage doors before attempting to hoist employees.

That section 8536 does not create any right of action or destroy any defense available at the time of its enactment are questions set at rest by the former decision of this court. (*Osterholm* v. *Boston & Mont. Con. C. & S. Min. Co.*, 40 Mont. 508, 107 Pac. 499.) In the absence of some statute creating this right of action, these plaintiffs would be remediless, for it was [1]   the rule at common law that, for the death of one person caused by the wrongful act of another, the law furnished no remedy by civil action (*Dillon* v. *Great Northern R. Co.*, 38 Mont. 485, 100 Pac. 960); and it was to supply this lapse that Lord Campbell's Act was adopted in England, and statutes of the same general character have been enacted in this country. Our own provision is found in section 6486, above, which declares that when the death of one person, not a minor, is

caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death. It is by virtue of that section that these plaintiffs are now in court; and the character of this action and the defenses available are to be determined from a construction of that section. The statute does not deal with questions of pleading, and the facts necessary to be stated in any given instance depend upon the character of the right asserted. In *Melville* v. *Butte-Balaklava Copper Co.*, 47 Mont. 1, 130 Pac. 441, we gave to this provision of the law our most earnest consideration. Its history was traced and its purpose determined. There was involved directly the inquiry: "Do the words of the statute, 'wrongful act or neglect of another,' imply actionable wrong or negligence toward the deceased or toward the surviving wife and children?" After a thorough examination of the subject, in the light of the history of the provision and its amplification by other tribunals, Chief Justice Brantly, speaking for the court, said: "The meaning of the expression 'wrongful act or neglect of another' thus became established and clearly limited to those cases only wherein the death is wrongful as against the deceased and to preclude recovery when death was due to the decedent's own fault." Referring to the legislative history and the former decisions of this court which recognize the rule that under this statute recovery can be had only in a case in which the deceased was himself without fault, the Chief Justice proceeded: "The interpretation thus given the statute by the legislature, and impliedly by these decisions of this court, has become so firmly established as the rule of decision in this jurisdiction that we do not feel justified in departing from it. To sustain the plaintiffs' contention would be to adopt an interpretation which the legislature never intended that the statute should have and thus destroy defenses of which defendant cannot be deprived, except by Act of the legislature. If a change should be wrought, it is the office of that body to make it, and not of this court"—and concluded by quoting from the opinion of the supreme court of the United States in *North-*

*ern Pacific R. Co.* v. *Adams,* 192 U. S. 440, 48 L. Ed. 513, 24 Sup. Ct. Rep. 408, a carrier and passenger case where a like statute was considered, as follows: "The two terms, therefore, 'wrongful act' and 'neglect,' imply alike the omission of some duty, and that duty must, as stated, be a duty owing to the decedent. It cannot be that, if the death was caused by a rightful act or an unintentional act with no omission of duty owing to the decedent, it can be considered wrongful or negligent at the suit of the heirs of the decedent. They claim under him, and they can recover only in case he could have recovered damages had he not been killed but only injured. The company is not under two different measures of obligation, one to the passenger and another to his heirs. If it discharges its full obligation to the passenger, his heirs have no right to compel it to pay damages."

The rule of law is, then, settled in this state that, while the right of action given in section 6486 to the heirs or personal representatives is independent of that which the deceased would have had if he had survived his injury, yet it is of the same character and depends upon the same facts; and the inquiry whether a given state of facts constitutes a cause of action in favor of the surviving widow and children depends upon the answer to the inquiry: Would the same facts, if stated by the injured man, constitute a cause of action in his behalf? That the allegations disclosing a breach of a statutory duty charge legal negligence, and that this complaint states a cause of action for damages for negligence, may be conceded even though the word "negligent" or "negligently" is not used.

But the immediate question before us is not whether the complaint states *a cause of action,* but whether the facts alleged constitute a cause of action, independently of the element of negligence. We might answer this interrogatory by reference to the foregoing decisions of our own court and conclude this discussion upon the evidence but for the earnestness with which counsel [2, 3] for appellants contend that, because the act or omission charged in this instance amounts to a crime, the defendant is limited to those defenses only which would be available to it

in a criminal action in which it was defendant, prosecuted by
the state upon indictment or information charging the unlawful
killing of August Maronen.   The pleas available in a criminal
action are enumerated in section 9209, Revised Codes: "There
are four kinds of pleas to an indictment or information.   A
plea of: (1) Guilty.   (2) Not guilty.   (3) A former judgment
of conviction or acquittal of the offense charged, which may be
pleaded either with or without the plea of not guilty.   (4) Once
in jeopardy"—but these are declared to be applicable to a
charge presented by indictment or information and they are not
applicable to civil actions.   There is not any more reason for
applying the provisions of section 9209, above, to this action
than there is for invoking the other rules of criminal procedure.
Counsel for appellants would scarcely admit that in all actions
of this character the county attorney must appear for the plain-
tiff; that the action must be initiated by filing a complaint, in-
dictment, or information; that defendant should be brought into
court by warrant; that the proceeding might be commenced in
a justice of the peace court and defendant be entitled to a pre-
liminary examination; that the pleas must be made orally; that
the defendant should be entitled to twice the number of per-
emptory challenges allowed the plaintiffs; that plaintiffs should
be compelled to sustain the burden of proving the charge made
by evidence beyond a reasonable doubt; that a jury trial could
not be waived; and that a unanimous verdict only could be re-
turned—and yet the reason for invoking one provision of the
Code of Criminal Procedure is just as cogent as that in favor
of any other one.   Counsel err in assuming that the ordinary
defenses available in negligence actions never were applicable to
a charge which amounts to a crime when made in a civil action.
Aside from the few fundamental principles enumerated in the
Constitution, we have but two sources to which to resort in order
to determine rules of substantive law or law of procedure: The
Codes and the common law.   "Law is a solemn expression of the
will of the supreme power of the state."   (Rev. Codes, sec.
3550.)   "The will of the supreme power is expressed: (1) By

the Constitution. (2) By statutes.'' (Sec. 3551.) ''The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this state, or of the Codes, is the rule of decision in all the courts of this state.'' (Sec. 3552.) There is not any rule of the Constitution or provision of the Codes which lends support to the view for which appellants contend, and we are equally certain that such a rule was not invoked at common law.

While the common-law forms of action have been abolished in this state, the principles which underlie them have not been changed, and a reference to the forms as well as the principles not infrequently aids in determining the character of a right or a remedy. The Lord High Chancellor of Great Britain in his recent address to the American Bar Association, in referring to the common law with special reference to its growth and development, said: ''Its paradox is that in its beginning the forms of action came before the substance. It is in the history of English remedies that we have to study the growth of rights.'' If August Maronen had not been killed but only injured and had brought his action for damages against this defendant charging the violation of this same statute as a proximate cause of his injury, would his complaint state a cause of action independently of the element of negligence? At common law the injured party had his remedy in trespass or by an action on the case, dependent upon the character of the act which caused the injury, but it was immaterial whether the wrongful act amounted to a crime or only a tort. If the injury was the immediate and direct result of the wrongful act, the remedy was sought in trespass; but if the injury was, as to the act complained of, consequential or arose from nonfeasance, then the remedy was by an action on the case. To illustrate: (1) If the defendant had struck Maronen with the cage or had thrown him from it, his form of action would have been trespass, and, if the injury resulted from the defendant's negligence, the action would not have differed from any other negligence action so far as it affected the defenses available; but, if the injury resulted from

defendant's intentional act, then a plea of justification alone would have been available. (2) But for the injury arising from his fall from the cage which resulted from the omission to close the cage doors, his action would have been on the case, and negligence must have been alleged. (*Fleming* v. *Lockwood*, 36 Mont. 384, 122 Am. St. Rep. 375, 13 Ann. Cas. 263, 14 L. R. A. (n. s.) 628, 92 Pac. 962.) So far as this action is concerned, these observations upon the rules of pleading at common law are somewhat more speculative than practical. They answer appellants' contention and aid in determining the line of demarcation between the class of personal injury actions in which negligence is not a necessary element and the class in which the allegation of negligence is necessary.

This complaint states a cause of action for damages caused by negligence, but it does not state a cause of action upon any other theory; and, having set forth facts which disclose legal negligence on the part of the defendant, it was permissible for it to interpose any of the ordinary defenses applicable in negligence cases. Possibly there may be found authorities which dispute this conclusion. The Illinois court has reached a different result, but upon a different penal statute. Aside from the Illinois cases, the decisions cited by counsel for appellants are not in conflict with our conclusion. As we view them, they are not in point in fact or in principle. We do not think there is any analogy between this case and an action for damages caused by dueling, assault and battery, or an abortion. But, whatever may be said of the authorities elsewhere, the decision in *Osterholm* v. *Boston & Mont. Con. C. & S. Min. Co.*, above, is decisive of the question in this state. In our opinion, however, the determination of this controversy is to be found in the merits as disclosed by the evidence, and it is of little consequence by what name the successful defense is designated. The trial court heard the witnesses, observed their demeanor while upon the witness-stand, and every presumption will now be indulged in favor of the correctness of its conclusions. If there is substantial evidence to support any of defendant's special defenses or from

which a fair inference to that effect can be drawn, then this court will not interfere.

On September 7, 1911, the deceased, with Powers, Conroy, Ryan, and Updegraff, all miners employed by the defendant company, were directed to cement up a leak in a bulkhead in a drift on the 1,200-foot level from the Mollie Murphy shaft where gas was escaping. In the course of their operations Updegraff became affected by the gas, and Ryan, Maronen, and Conroy took him upon the cage, and without closing the doors the signal to hoist was given, and when at the 1,000-foot level or thereabouts Maronen fell from the cage and was killed. The evidence given upon the trial is very meager, and there are not any disputed questions of fact. Plaintiffs called Mrs. Maronen, who testified to the relationship existing between them and the deceased, to the habits and earning capacity of the deceased and his contributions to these plaintiffs. Then, upon an admission by the defendant as to the expectancy in life of one of Maronen's age as shown by the standard tables of mortality and as to the cost of an annuity, plaintiffs rested their case. The defendant called the mine foreman, the shift-boss, and two of the men who were with Maronen when he fell from the cage. At the close of their testimony the cause was submitted without rebuttal. To set forth even a brief abstract of the testimony of defendant's witnesses would not serve any purpose, useful or otherwise. We have studied it carefully, and our conclusion is that it tends to prove the following facts: That at the time of this accident, and for some considerable time prior thereto, there were but two men regularly employed on each shift in the Mollie Murphy shaft, and for this reason there were not any station-tenders, but the men on shift or working in the shaft when they were being hoisted or lowered were required to open and close the cage doors themselves; that as to Maronen this duty was imposed by specific instructions given him individually; that the rule required the first man upon the cage to close the door on his side of the cage; that, at the time these men entered the cage for the purpose of bringing Updegraff to the surface, Maronen was

the first man to enter the cage; that he did not close the door next to where he stood; and that it was through that door that he fell. The cause of his fall is not disclosed. There is a bare suggestion that after the cage started he became affected by the gas. Just before starting, Ryan asked Maronen and Conroy how they felt and received a response from each that he felt fine. With the evidence from which these fact conclusions are drawn [4] before it, the trial court made a general finding in favor of the defendant which is equivalent to a finding in defendant's favor upon every issue necessary to support the judgment. (*City of Butte* v. *Mikosowitz*, 39 Mont. 350, 102 Pac. 593; *Hansen* v. *Larsen*, 44 Mont. 350, 120 Pac. 229.) There is some evidence that the rule requiring the miners to close the cage doors was habitually violated by Conroy and possibly by others, but there is not any evidence that such violations were countenanced by the defendant; on the contrary, it is disclosed that, when some miners in its employ were detected violating the rule a short time before this accident occurred, they were immediately discharged. Neither do we attach importance to the fact that, at the precise time of this accident, Maronen's place of regular employment was not in the Mollie Murphy shaft. He had been working there but a short time before, was familiar with the conditions, and understood the duty which was imposed upon him.

When this safety cage statute in its present form was enacted, the legislature understood that a corporation is an intangible entity, and that the duty to close the cage doors must of necessity be imposed upon some servant of the corporation. If a corporation employed a man whose sole duty it was to open and close the cage doors at a particular station, and such station-tender neglected his duty when he himself was being lowered or hoisted, with the result that he was killed or injured, neither his heirs nor personal representatives in the one instance, nor he himself in the other, could recover, for the very obvious reason that he would be responsible for the result—would be the sole author of his misfortune. We are not called upon in this instance to

determine to what extent a corporation operating under this statute may impose upon its workingmen generally the duty to close the cage doors. We are not required to complicate the question before us in order to make its solution more difficult.

At the time this injury occurred there were only two men regularly employed on each shift on the work reached through the Mollie Murphy shaft, and the question for solution is: [5] Was it the duty of the defendant corporation, under those circumstances, to employ station-tenders (a man for each station, where the two miners or either of them might be sent to work), whose sole duty it would be to open and close the cage doors, or in this particular instance, when five men were lowered to perform a particular piece of work out of the ordinary, was it incumbent upon the employer to hire a sixth man to go along for the special purpose of closing the cage doors? This statute does not impose such a duty in terms. Its provisions are to be given a reasonable construction, in view of the evils sought to be remedied by its enactment. Notwithstanding its penal character, it is a police regulation designed to protect the lives of the men engaged in the extrahazardous occupation of deep underground mining. But it was not intended to lay an embargo upon the mining industry, and consequently it does not contemplate that it shall be necessary that two or three men be employed to wait upon one man who is actively engaged in mining. It does impose a duty and contemplates that in its discharge someone shall be employed to act for the corporation in performing the manual labor of opening and closing the cage doors. If the man so engaged is capable, understands the method to be pursued in fulfilling the obligation of his employment, and is not encumbered with other duties which tend to interfere with the discharge of the mechanical operation of opening and closing the doors, it would seem that the corporation discharged its duty in the first instance, though it might thereafter be liable to someone else injured by reason of the failure of this agent or servant to discharge the duty assigned him; in other words, so long as the other duties imposed upon

the man who is to open and close the cage doors do not interfere with his work of opening and closing the doors, the statute does not expressly or impliedly prohibit the imposition of such dual duties or make the employment of a man, whose sole duty it shall be to open and close the doors, imperative.   The evidence tends to show that Maronen was an experienced miner and a capable man; that in each door opening of the cage used in the Mollie Murphy shaft were double doors which closed inwardly and locked or fastened by a simple device; that each door weighed less than fifteen pounds and opened and closed easily; that the doors upon this cage were in good working condition, and that it required no technical knowledge or experience, and very little labor, to close them; that, so far as the defendant was concerned, the work which Maronen was required to do upon the occasion when he was injured had no relation whatever to, and could not interfere with, the discharge of his duty to close the cage door; that he had ample opportunity to close the door before the cage was hoisted; that it was his duty to do so; that he failed in the discharge of that duty and paid the penalty with his life.   The evidence does not show or tend to show that he was so engrossed with his attention to Updegraff that he could not close the door or that in the excitement he forgot to do so.   Conroy likewise failed to close the door on his side of the cage and explains his remissness by saying: "It was dangerous, but we took the chance, I guess."

Our conclusion is that the trial court was justified in finding that Maronen was to all intents and purposes a station-tender in the sense that it was his duty to close the door when he entered the cage to be hoisted, and that his death resulted from his failure to discharge a duty which could be and was rightfully imposed upon him; and, because he could not have succeeded upon these facts in an action if he had been injured only, neither his heirs nor personal representatives can succeed in this one.

The judgment and order denying plaintiffs a new trial are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.