Points Decided.

(December 23, 1921.)

# W. J. COCHRAN and MARY M. COCHRAN, His Wife, Respondents, v. CHARLES L. GRITMAN, Appellant.

[203 Pac. 289.]

PHYSICIANS AND SURGEONS—MALPRACTICE—NEGLIGENCE—WHEN QUESTION OF FACT — EXAMINATION OF JURORS — MISCONDUCT OF COUNSEL—READING MEDICAL WORKS—NEW TRIAL—CHANCE VERDICT—EXPERT WITNESSES—HYPOTHETICAL QUESTIONS—WHEN EVIDENCE SUFFICIENT.

1. In an action against a surgeon for negligence, where he is charged with having failed to remove a gauze sponge before closing the incision, following an operation for appendicitis, the question of its removal is one of fact, even though it should be conclusively shown that there was a septic condition of the wound, that it healed, and all the medical testimony was to the effect that if the sponge had remained it could not have healed under such conditions.

2. The rule that where oral testimony conflicts with physical facts it should be disregarded does not apply to a case involving a surgical operation, so that it may be said as a matter of law that where a certain result did not follow a given cause, such cause could not have existed.

3. In an action against a surgeon for negligence, plaintiffs' counsel asked a juror on his *voir dire* whether he was a stockholder or interested in any company that insured physicians and surgeons, and upon objection the court instructed counsel that he was not to mention this at all. *Held*, that the asking of such question was not error.

4. In an action against a surgeon for negligence, where it is claimed that plaintiffs' counsel referred to plaintiffs as being poor people, but upon objection withdrew the remark, and also said of the defendant that "he had got a part of his reputation in his hospital, and a part of it is buried in yonder cemetery," *held* not reversible error where the court admonished the jury to disregard such statements.

Publisher's Note.

1. Liability of physician or surgeon for foreign substance left in wound or in opening for surgical operation, see notes in 19 **Ann. Cas.** 190; **Ann. Cas.** 1913E, 1010; **Ann. Cas.** 1917D, 670.

5. It is not error for the court to permit counsel in his argument to restate questions asked of expert witnesses, although he read such questions from standard medical books from which they were taken.

6. A new trial will not be granted on the ground of newly discovered evidence where it is shown that the evidence relied upon is largely hearsay, and the person alleged to have made the statements denies that she made them.

7. A verdict should not be set aside on the ground that it was arrived at by chance unless there is a clear showing that it was the result of chance instead of deliberation.

8. An expert medical witness may be examined as to his opinion, based upon his knowledge gained from treatment of a patient, where the hypothetical question also includes a history of the case as shown by the evidence, covering the period immediately prior to such treatment.

9. In the examination of expert witnesses upon an issue of fact, the hypothetical questions should be so framed as to fairly reflect the facts admitted or proved, but they need not necessarily include all of the proofs or facts claimed to have been proven by the adversary.

10. It is permitted to ask a question of an expert witness, as such, that cannot be put to an ordinary witness, and it is not an objection that he is asked for an opinion upon a question involving the point to be decided by the jury, although the ultimate fact is always a question for the jury.

11. Evidence examined in this case and *held* sufficient to support the verdict of the jury.

APPEAL from the District Court of the Second Judicial District, for Latah County. Hon. Edgar C. Steele, Judge.

Action for damages for alleged negligence in failing to remove a gauze sponge after an operation for appendicitis. Judgment for plaintiffs and defendant appeals. *Affirmed.*

Wm. E. Lee, Suppiger & Ogden and E. J. Cannon, for Appellant.

The proof of physical facts that the wound was septic and that a septic wound with a foreign substance could not

Publisher's Note.

10. Whether expert witness may give opinion as to ultimate fact, see note in **Ann. Cas.** 1914B, 191.

and would not heal was conclusive. (*Chybowski v. Bucyrus,* 127 Wis. 332, 106 N. W. 833, 7 L. R. A., N. S., 357; *Fleming v. Northern Tissue Paper Co.,* 135 Wis. 157, 114 N. W. 841, 15 L. R. A., N. S., 701, and many cases cited.)

The court erred in denying defendant's motion for new trial: (a) For misconduct of counsel in questioning Juror Peterson. (*Iverson v. McDonnell,* 36 Wash. 73, 78 Pac. 202; *Lowsit v. Seattle Lumber Co.,* 38 Wash. 290, 80 Pac. 431; *Stratton v. C. H. Nichols Lumber Co.,* 39 Wash. 323, 109 Am. St. 881, 81 Pac. 831; *Wildrick v. Moore,* 66 Hun, 630, 22 N. Y. Supp. 1119; *Cosselmon v. Dunfee,* 172 N. Y. 507, 65 N. E. 494; *Sawyer v. J. M. Arnold Shoe Co.,* 90 Me. 369, 38 Atl. 333.

(b) For misconduct of counsel in calling the jury's attention to the fact that plaintiffs were poor. (*Washington-Va. R. Co. v. Deahl,* 126 Va. 141, 100 S. E. 840; *Monmouth Mining & Mfg. Co. v. Erling,* 148 Ill. 521, 39 Am. St. 187, 36 N. E. 117; *Brunswick & Western R. Co. v. Wiggins,* 113 Ga. 842, 39 S. E. 551, 61 L. R. A. 513; *Hundley v. Chadick,* 109 Ala. 575, 19 So. 845; *Greenfield v. Kennett,* 69 N. H. 419, 45 Atl. 233.)

(c) In insinuating that many of defendant's patients were in the cemetery. (*Louisville etc. Ry. Co. v. Sparks,* 12 Ind. App. 410, 40 N. E. 546; *Baxter v. Krainik,* 126 Wis. 421, 105 N. W. 803; *Kinnaman v. Kinnaman,* 71 Ind. 417; *Mainard v. Reider,* 2 Ind. App. 115, 28 N. E. 196; *Huckell v. McCoy,* 38 Kan. 53, 15 Pac. 870; *Greenfield v. Kennett, supra; Taylor v. Spokane P. & S. R. Co.,* 72 Wash. 378, 130 Pac. 506.

(d) For misconduct of plaintiffs' counsel in reading from the medical authorities.

The court erred in refusing to grant a new trial on the ground of newly discovered evidence. (*Twin Springs Placer Co. v. Upper Boise etc. Min. Co.,* 6 Ida. 687, 59 Pac. 535.)

The verdict was arrived at by chance and through improper methods. (*Flood v. McClure,* 3 Ida. 587, 32 Pac. 254; *Giffen v. City of Lewiston,* 6 Ida. 231, 55 Pac. 545; *Wright v. Union Pacific Ry. Co.,* 22 Utah, 338, 62 Pac. 317.)

The answers to the hypothetical questions asked of Dr. Matthews should have been excluded.   (*Illinois Cent. R. Co. v. Smith,* 208 Ill. 608, 70 N. E. 628; *Travis v. Louisville & N. R. Co.,* 183 Ala. 415, 62 So. 851; *Chicago City Ry. Co. v. Sugar,* 117 Ill. App. 578; *City of Centralia v. Ayres,* 133 Ill. App. 290; *Chicago City Ry. Co. v. Soszynski,* 134 Ill. App. 149; *Sachra v. Manilla,* 120 Iowa, 562, 95 N. W. 198; *Martin v. Des Moines Edison Light Co.,* 131 Iowa, 724, 106 N. W. 359; *Strever v. Woodard,* 160 Iowa, 332, 141 N. W. 931, 46 L. R. A., N. S., 644; *Chicago, R. I. & P. Ry. Co. v. Sheldon,* 6 Kan. App. 347, 51 Pac. 808; *United Rys. & Electric Co. v. Corbin,* 109 Md. 442, 72 Atl. 606; *Smart v. Kansas City,* 208 Mo. 162, 123 Am. St. 415, 13 Ann. Cas. 932, 105 S. W. 709, 14 L. R. A., N. S., 565; *State v. Hyde,* 234 Mo. 200, Ann. Cas. 1912D, 191, 136 S. W. 316.)

G. C. Hoyt and A. H. Oversmith, for Respondents.

Counsel for respondents were entitled to know if any member of the jury was a stockholder in an indemnity insurance company.   (*Baldarachi v. Leach,* 44 Cal. App. 603, 186 Pac. 1060; *Samuels v. Willis,* 133 Ky. 459, 19 Ann. Cas. 188, 118 S. W. 339; *De Liere v. Goldberg, Bowen & Co.,* 30 Cal. App. 612, 159 Pac. 197; *Blair v. M. McCormack Const. Co.* 195 N. Y. 520, 88 N. E. 1114; *Rinklin v. Acker,* 125 App. Div. 244, 109 N. Y. Supp. 125; *Norris v. Holt-Morgan Mills,* 154 N. C. 474, 70 S. E. 912; *Wilson v. St. Joe Boom Co., ante,* p. 253, 200 Pac. 884.)

Remarks of counsel in argument are not grounds for reversal unless opposing counsel asks the court to admonish the jury.   (*Big Ledge Copper Co. v. Dedrick,* 21 Ariz. 129, 185 Pac. 825; 3 C. J., pars. 863 and 864, and cases cited; *Labonte v. Davidson,* 31 Ida. 644, 175 Pac. 588; *Watts v. Spokane P. & S. Ry. Co.,* 88 Or. 192, 171 Pac. 901.)

The knowledge of expert witnesses may be tested upon cross-examination by reading to them extracts from standard authorities.   (*Osborn v. Cary,* 28 Ida. 89, 152 Pac. 473,

and cases cited; *State v. Brunette,* 28 N. D. 539, Ann. Cas. 1916E, 340, 150 N. W. 271.)

Counsel in his argument may read to the jury a transcript of stenographer's notes, hence no error can be predicated on reading from medical authorities where the same were used on cross-examination. (38 Cyc. 1483, 1484; *Pinkus v. Pittsburg etc. Ry. Co.,* 65 Ind. App. 38, 114 N. E. 36.)

The verdict was not a quotient or chance verdict. (*Sales v. Maupin,* 35 S. D. 176, Ann. Cas. 1917C, 1222, 151 N. W. 427; *Newman v. Great Shoshone etc. Power Co.,* 28 Ida. 764, 156 Pac. 111; 29 Cyc. 812; *St. Louis & San Francisco Ry. Co. v. Brown,* 45 Okl. 143, 144 Pac. 1075; *Florence etc. R. Co. v. Kerr,* 59 Colo. 539, 151 Pac. 439; *Loy v. Northern Pac. Ry. Co.,* 77 Wash. 25, 137 Pac. 446; *Wiles v. Northern Pac. Ry. Co.,* 66 Wash. 337, 119 Pac. 810.)

The answers of Dr. Matthews to hypothetical questions were properly admitted as evidence by the court. (*McAlinden v. St. Maries Hospital Assn.,* 28 Ida. 657, Ann. Cas. 1918A, 380, 156 Pac. 115; *Jones v. City of Caldwell,* 20 Ida. 5, 48 L. R. A., N. S., 119, 116 Pac. 110; *Tyson Creek R. R. Co. v. Empire Mill Co.,* 31 Ida. 580, 174 Pac. 1004.)

Answer to hypothetical question which does not include all of the facts is not objectionable; facts not given in question may be brought out in cross-examination. (*Seckinger v. Philibert & J. Mfg. Co.,* 129 Mo. 590, 31 S. W. 957.)

Whenever there is substantial evidence to support a verdict the same shall not be set aside. (Sec. 7170, C. S.; *Dangel v. Levy,* 1 Ida. 722; *Lamb v. Licey,* 16 Ida. 664, 102 Pac. 378; *Wolfe v. Ridley,* 17 Ida. 173, 20 Ann. Cas. 39, 104 Pac. 1014; *Seawell v. Pacific etc. Ry. Co.,* 21 Ida. 277, 121 Pac. 556; *Davidson Grocery Co. v. Johnston,* 24 Ida. 336, Ann. Cas. 1915C, 1129, 133 Pac. 929; *Richardson v. Bohney,* 26 Ida. 35, 140 Pac. 1106; *McAlinden v. St. Maries Hospital Assn., supra.*)

LEE, J.—This was an action by W. J. Cochran and Mary M. Cochran, his wife, respondents, against appellant Charles

W. Gritman, a physician and surgeon who owned and operated a hospital at Moscow, Idaho.

Among other things it is alleged in the complaint that on March 12, 1917, respondent Mary M. Cochran was ailing from an inflammation of the appendix, that she had previously suffered from such attacks over a period of several years prior thereto, and had been advised by other physicians that the appendix should be removed, and that she was also about two months advanced in pregnancy. At this time she came from her home at Juliaetta, Idaho, and placed herself under the care of appellant, who advised her that in order to retain her good health it would be necessary for her to undergo an operation to remove the appendix, and assured her that the operation could be performed without any serious results, either to herself or to the life of the expected child.

It is further alleged that at this time appellant operated upon respondent and removed from her body the appendix, but that he performed the operation in such a careless and negligent manner that he left in the abdominal cavity a small gauze sponge placed there during the operation before he closed the incision in the abdominal wall; that respondent was discharged from said hospital at the end of fifteen days, being assured by appellant that she would not be further troubled with appendicitis or the effects of the operation; that she returned to her home, and shortly thereafter an abscess developed where the incision had been made, and appellant was again consulted, and advised her attending physician, Dr. Laughbaum, to open such abscess, which was done and the wound appeared to heal; that some time thereafter another abscess developed near where the appendectomy incision had been made, and appellant again attended her, at her request, and opened the said abscess and probed the same, leaving the further care to her then attending physician, Dr. John E. Hoyt; that she continued to suffer intense pain from the running of the abscess, and on October 27th, 1917, she was successfully delivered of her

child, but continued to be under the care of a physician and other assistants; that a fistula formed on her bowels, and pus and fecal matter continued to pass from such fistula, which was offensive and caused her great suffering and annoyance; that her condition was such that in November following she was taken to St. Luke's Hospital in Spokane and placed under the care of Dr. Matthews, who operated upon her and removed from her body the gauze sponge which she alleges had been left there by appellant; that this sponge had become decayed and full of pus germs, but on account of her weakened condition it was impossible to complete the operation other than to remove said sponge and cleanse her body, but respondents were advised that another operation would probably be necessary; that in June, 1918, following she was again operated upon at St. Luke's Hospital by Dr. Matthews, and on September 12th thereafter a third operation was performed on the body of respondent by Dr. Matthews, and it was found necessary to remove both ovaries, which had become diseased as the result of such sponge having been left in her body.

It is further claimed that by reason of this alleged negligence on the part of appellant, respondent was required to undergo these three operations at St. Luke's Hospital, to remain there for a period of several months, and to require the attention of a special nurse during most of the time; that prior to said first operation, she had been a woman of robust health except for this inflammation of the appendix, but that her health had been permanently injured by such negligent acts of appellant; and that respondents had been required to expend for physicians' and surgeons' professional treatment, nurse hire, hospital expenses, medicines and hired help, the sum of approximately $3,000, and that the expenditure of additional sums would be required.

Appellant's answer admits receiving respondent Mary M. Cochran at his hospital on March 12, 1917, and alleges that she had acute appendicitis, which required an immediate operation, that he removed the appendix, which he found

gangrenous, and that the disease and consequent infection therefrom had spread in and through the peritoneal cavity. He also admits being subsequently consulted by letter and over the phone as to her condition, and that he again briefly attended her at her home in Juliaetta about October 10th and opened and probed an abscess, and that he was paid for his professional services and hospital fees. But he positively denies all of the averments of the complaint as to negligence or carelessness respecting the treatment or care which respondent received while under his charge, and affirmatively alleges that such operation was skillfully performed according to the most approved methods of modern surgery, and under such conditions and circumstances of circumspection and caution as to have rendered such an accident as leaving a gauze sponge in said incision at the time of the operation practically impossible. As to the remaining material averments of the complaint, relative to the pain and discomfiture suffered by respondent, the additional operations she was required to undergo, and the expense that respondents had incurred by reason thereof, these are denied upon information and belief, but were not seriously controverted at the hearing.

A trial was had by the court with a jury, which returned a verdict for respondents in the sum of $6,000, and judgment was entered thereon, from which, and from an order denying a motion for a new trial, this appeal is taken.

Appellant makes numerous assignments of error, but they will be considered under five headings: First, the conclusiveness of appellant's defense in proving that it was an established scientific fact that a septic wound, such as this was conceded to be, could not heal when a foreign substance had been left therein, comprising assignments 1, 2 and 7; second, errors predicated upon the alleged misconduct of respondents' counsel during the trial, covering assignment 3, subdivisions (a), (b), (c) and (d), and assignment 10 in the supplemental brief; third, errors of the court in refusing to grant a new trial on the ground of newly discovered

evidence, covering assignment 4; fourth, errors of the court in refusing to grant a new trial because the verdict was arrived at by chance and through improper methods, covering assignment 5; and fifth, errors of the court in permitting Dr. Matthews to answer certain hypothetical questions relating to the effect of the gauze sponge taken by him from the body of Mrs. Cochran at the time he operated upon her in December of 1917, his opinion as to what caused the fistula, what caused the abscess to form in the ovaries, and what his experience had taught him in the matter of adhesions in surgical cases of this character, covering assignment 8, subdivisions (a), (b), (c) and (d).

Taking up appellant's first contention, which is that since it was conceded that there was a septic condition of the wound at the time it was closed, and that all of the medical experts testified that under these conditions it would not and could not heal if a foreign body was left therein, but would constantly grow worse, but because it is shown that this wound did heal, therefore a foreign substance, such as a gauze sponge, could not have remained in the cavity; and that this being a scientific question, undisputed and impossible of dispute, it conclusively defeats plaintiffs' claim that a sponge was left in the cavity at the time respondent was operated upon by appellant in March, 1917. To support this contention appellant relies upon the rule announced in *Chybowski v. Bucyrus Co.*, 127 Wis. 332, 106 N. W. 833, 7 L. R. A., N. S., 357, and also upon *Fleming v. Northern Tissue Paper Mill*, 135 Wis. 157, 114 N. W. 841, 15 L. R. A., N. S., 701. In the first case referred to, a single witness testified that a hammer of great weight, automatically operated by steam, by reason of some alleged defect not shown, had a habit of rising and repeating a blow without operation of the controls. The appellate court concluded from the evidence that this was a physical impossibility, and vacated the finding of the jury that this had been so.

The second case is an opinion by the same judge, and reverses the lower court in holding that there was no question

for the jury where, in a somewhat similar performance on the part of the cutting knife of a paper machine, the trial court held that there was no question for the jury.

The first case holds that where the physical conditions are such as to preclude all reasonable probability that the testimony of a witness is true, it being contrary to well-known physical laws, the jury should be instructed to disregard such testimony. We think this principle has no application to the facts and circumstances of the case at bar, for the reason that the science of medicine and surgery has not reached such a state of perfection that it can be claimed that since a given cause will produce a certain result, if such result does not follow, it must be presumed that the cause does not exist. That is, appellant contends that since this wound was septic, and yet healed, when all of the testimony of the experts was to the effect that it could not heal if a foreign body had been left in contact with it, we must conclusively presume that no such body was allowed to remain there. But aside from these considerations, there was substantial evidence that the wound never did heal. Dr. Hoyt stated that at the time he was called, early in October, the abscess was open and had a discharging sinus, including gas bubbles from the perforated bowel of the patient, and that she was confined to her bed; that he advised a consultation with the appellant, Dr. Gritman, who called upon Mrs. Cochran at her home in Juliaetta about fifteen days prior to her confinement, and while there probed the abscess, stating that he thought it was caused by a foreign substance, probably a ligature; that after Dr. Gritman probed the abscess, he instructed Dr. Hoyt to dress the wound. Appellant confirmed the statement as to his having called upon the respondent, and of his having still further opened and probed the wound by means of a haemostat. Mrs. Cochran testified that at the time of leaving the hospital she had a peculiar feeling on her right side, as if something were pushing up at the site of the incision; that eleven days after her return home Dr. Laughbaum was called to treat her

on account of a small abscess that had formed at the top of the old scar, which he lanced, cleansed and dressed; that she suffered constantly with pains in the region of the abdominal incision. All the expert testimony on that subject, including that of appellant, is to the effect that the disturbing symptoms which followed this operation to the time of the removal of the sponge from Mrs. Cochran's body by Dr. Matthews were not such as would ordinarily follow an operation upon a patient in her condition. It also appears that the respondent suffered pain almost continually from the time of the operation until long after this sponge was removed by Dr. Matthews, and that abscesses did form near the site of the wound. There was sufficient evidence to submit to the jury as to whether this sponge had been left in this wound by appellant.

The second alleged error to which our attention is directed is misconduct of respondents' counsel, in which several particulars are designated. The first is that counsel on the *voir dire* examination of Juror Peterson asked whether or not he was a stockholder in any insurance company that insured physicians and surgeons, and the court sustained the objection and instructed counsel that he was not to mention this at all, and that if there was any insurance company in this case the jury was to know nothing about it, and that it was error to suggest such a thing. In *Wilson v. St. Joe Boom Co., ante,* p. 253, 200 Pac. 884, it is said that in an action for personal injuries, evidence that defendant carries casualty insurance is incompetent and immaterial, but counsel may be permitted on the *voir dire* examination of jurors to ascertain whether a juror has any interest in the result of the litigation, although it might show such juror's connection with a casualty company, following the holding in *Faber v. Reiss Coal Co.,* 124 Wis. 554, 102 N. W. 1049, wherein it is said that parties have a legal right to ascertain whether jurors have a pecuniary interest in the result of the litigation, and that the exercise of this right necessarily authorizes them to elicit information on the subject.

In the second specification of misconduct, appellant complains that in the course of the argument, respondents' counsel referred to them as being poor people, and as having expended much money for needed help. To this statement appellant promptly objected, and counsel replied that he would withdraw the statement, and thereafter limited his remarks in this particular to testimony in the record with regard to the occupation of the husband, W. J. Cochran. Upon this state of the record, we do not think this was such error as to call for a reversal of the case, or that the authorities cited in support of this contention so hold.

In *Monmouth Min. & Mfg. Co. v. Erling*, 148 Ill. 521, 39 Am. St. 187, 36 N. E. 117, paragraph 3 of the syllabus says: "Remarks by counsel in his address to the jury as to the financial condition of the parties is not cause for reversal, where the judge, on objection being made, directs him to keep within the record, and where it does not appear that the defeated party was injured by such remarks."

In *Greenfield v. Kennett*, 69 N. H. 419, 45 Atl. 233, it is held that whenever counsel in the closing argument goes outside of the evidence for the purpose of prejudicing the jury, the verdict may be set aside, unless the presiding judge finds that the jury were not influenced by the remarks.

It is further claimed that there was misconduct in respondents' counsel insinuating that many of appellant's patients were in the cemetery. During the argument, respondents' counsel replied to the argument of appellant's counsel, wherein he had referred to the professional reputation of Dr. Gritman and to his having saved respondent's life, by saying that other surgeons might have done equally as well; that in the early days Dr. Gritman's hospital was the only one in the community outside of Spokane, and that "he had got a part of his reputation there, and a part of his reputation is buried in yonder cemetery." Objection was promptly interposed, opposing counsel construing this remark to mean that Dr. Gritman had made mistakes resulting in death, to which the court replied, "He doesn't state it

as a fact,'' and respondents' counsel added that as they had argued the good reputation of the doctor from the evidence, he should be permitted to comment upon the doctor's reputation as he understood it. The court then told the jury that they must not consider such statements.

It would appear that the argument of counsel on both sides was somewhat *dehors* the record, and counsel should not make assertions of fact or insinuations of the existence of facts not supported by the proof, as there is danger that the jury will lose sight of the issues, or be influenced by the misstatements to the prejudice of the other party.

In *Goldstone v. Rustemeyer,* 21 Ida. 703, 123 Pac. 635, it is said that counsel cannot deliberately go outside of the evidence and attempt to excite the passions or prejudice of the jury, and have such conduct cured by an instruction to the jury at the close of the trial to the effect that they must not consider such remarks; and that where a judgment has been obtained by such conduct, a new trial must be granted, unless it appears affirmatively that the judgment was right, and would have been the same in the absence of such unauthorized argument. This cause was reversed because the evidence was held insufficient to support the verdict. (See, also, *Cumberland Tel. & Tel. Co. v. Quigley,* 129 Ky. 788, 112 S. W. 897, 19 L. R. A., N. S., 575; *Miller v. Nuckolls,* 77 Ark. 64, 113 Am. St. 122, 7 Ann. Cas. 110, 91 S. W. 759, 4 L. R. A., N. S., 149; *State v. Davis,* 88 S. C. 229, 70 S. E. 811, 34 L. R. A., N. S., 295.)

The court having immediately admonished the jury that they must not consider this statement of respondents' counsel, we are of the opinion that the jury were not misled thereby, and that the verdict would have been the same in the absence of such argument, and under all the facts and circumstances presented by this record, we do not deem it reversible error.

We think the cases cited by appellant in support of this assignment can be readily distinguished from case at bar. Thus in *Huckell v. McCoy,* 38 Kan. 53, 15 Pac. 870, counsel repeatedly made improper and prejudicial statements outside

of the record, which, over objection, were allowed to go to the jury.

In *Taylor v. Spokane P. & S. Ry. Co.*, 72 Wash. 378, 130 Pac. 506, the trial court refused to compel counsel to desist from improper and inflammatory remarks, which, in connection with erroneous evidence admitted, caused a reversal.

In the fourth subdivision of this assignment, the misconduct alleged is based on counsel's reading from medical authorities the questions he had asked the expert witnesses. The objection is that these authorities had not been introduced in evidence. Books of science are not ordinarily admissible in evidence, although expert witnesses may be interrogated by questions formulated from statements made in standard authorities relating to the matter in controversy, when expert testimony is permissible. (*People v. Wheeler*, 60 Cal. 581, 44 Am. Rep. 70; *People v. Hall*, 48 Mich. 482, 42 Am. Rep. 477, 12 N. W. 665; *Melvin v. Easley*, 46 N. C. 386, 62 Am. Dec. 171; *Burt v. State*, 38 Tex. Cr. 397, 40 S. W. 1000, 43 S. W. 344, 39 L. R. A. 305, 330; *Boyle v. State*, 57 Wis. 472, 46 Am. Rep. 41, 15 N. W. 827.)

Some authorities do hold that a pertinent quotation, or excerpts from works of science or art, classical, historical or other publications, made by way of illustrating argument, may be repeated by counsel or read from a book, so long as this is not made a pretext for getting improper matter before the jury as evidence. (*State v. O'Neil*, 51 Kan. 651, 33 Pac. 287, 24 L. R. A. 555.)

Counsel's conduct was not within the inhibition of the rules announced in the authorities appellant cites. The matter read in each instance was the same matter, with the slight variation necessary to put it in the form of a question, which he asked of the expert witnesses. Such expert witnesses had stated that the book was a standard authority, so that all of the objectionable matter read was merely a statement in argument of questions propounded to the expert witnesses. Some freedom of speech must be allowed, and counsel should be permitted to discuss the facts proved

or admitted in the pleadings, arraign the conduct of the parties and attack the credibility of the witnesses. (*Miller v. Nuckolls, supra; People v. Strauch,* 240 Ill. 60, 130 Am. St. 255, 88 N. E. 155; *People v. Fielding,* 158 N. Y. 542, 70 Am. St. 495, 53 N. E. 497, 46 L. R. A. 641, and note; *State v. Pancoast,* 5 N. D. 516, 67 N. W. 1052, 35 L. R. A. 518; *Hatch v. State,* 8 Tex. App. 416, 34 Am. Rep. 751.) He may repeat the evidence for the purpose of commenting upon it, and it is within the discretion of the trial court, at any time before verdict, to refresh the recollection of the jury as to testimony given by allowing the official report of the evidence to be read to them, although this power should be exercised only within proper limits. (*State v. Perkins,* 143 Iowa, 55, 20 Ann. Cas. 1217, 120 N. W. 62, 21 L. R. A., N. S., 931, and note.)

In *Pinkus v. Pittsburg, C. C. & St. L. Ry. Co.,* 65 Ind. App. 38, 114 N. E. 36, where a party was examined out of court before the trial, and was at the trial examined with reference to her testimony so taken, all of which was re-taken at the trial, counsel was permitted, over objection, to read the testimony so taken, which had been transcribed, upon the ground that the identical questions, and answers referred to in argument had gone into the record on cross-examination.

It was not error for the court to permit counsel in his argument to restate the questions he had asked of the expert witnesses, although he read such questions from the standard medical books from which they were taken.

Appellant contended that because foreign matter left in the human body has a tendency to work out, this sponge would not have remained all of this time, under the existing conditions. Respondents' counsel argued that pus was lighter than water, and threw a similar sponge into a glass of water, to show that its tendency was to sink. It is insisted that this was reversible error,—first, because counsel stated that pus was lighter than water, when there was no evidence on the subject, and second, that the experiment in

the presence of the jury was improper. In view of the trial judge having so frequently admonished the jury that they were to disregard matters outside of the record, and the fact that a sponge was removed from Mrs. Cochran's body in December following the operation in March, we conclude that the verdict would have been the same in the absence of this action on the part of respondents' counsel. As was said in *Watkins v. Mountain Home Co-op. Irr. Co.*, 33 Ida. 623, 197 Pac. 247, something must be presumed for the intelligence and fairness of a jury, and that it will not be influenced contrary to the evidence and instructions by every improper remark made or act done in its presence during the progress of the trial.

The third ground complained of is the refusal of the court to grant a new trial on the ground of newly discovered evidence. There is no merit in this contention. The affidavit in support of such ground, by one Amelia E. Wright, states a conversation which she had with a Mrs. Morgan, a sister of respondent Cochran, and it purports to give Mrs. Morgan's version and conclusions relative to the matter in controversy. But it appears that Mrs. Morgan's statements, if made, were hearsay, and she denied that she would or could testify to any of the matters contained in the Wright affidavit.

The fourth ground urged as error is the alleged misconduct of the jury in arriving by chance at the amount of the verdict returned. Two of the jurors refused to agree to any verdict for respondents, and made affidavits that when the jury retired to consider the verdict, two ballots were taken to determine whether it should be for plaintiff or defendant, and that upon the second ballot ten of the jurors favored a verdict for plaintiff; that these ten agreed that they would arrive at the amount of the verdict by each placing the amount he was willing to allow upon a slip, and dividing the aggregate sum thus obtained by twelve, taking the quotient as the verdict. These affidavits then say that this amount was not satisfactory, and after further discus-

sion the process was repeated, except that the total was divided by ten instead of twelve, but that this amount was still not satisfactory. The affidavits conclude: "That after considerable additional discussion, it was agreed to make the verdict an even sum of $6,000, the nearest amount (in thousands) to the quotient agreed upon." The affidavits of Christy, Johnson and Oller, three of the jurors who signed the verdict for respondent, state that said jurymen never agreed to average the individual opinions on the amount which each juror thought plaintiff was entitled to recover; that the matter of damages was discussed during nearly the entire time in which they deliberated on said verdict, and during said time various efforts were made to get the jury to agree upon different amounts; that just prior to returning their verdict, a motion was made that the jury ballot upon whether they should return a verdict in favor of plaintiff in the sum of $6,000; and that upon such ballot being taken, ten jurors agreed to such verdict, and it was returned in this amount. These affidavits all conclude in the following words: "Affiant further states on oath that there was never any agreement on the part of any of said jurymen to accept or sign a verdict based upon the average amount which the individual jurymen thought the plaintiff entitled to recover."

The second subdivision of C. S., sec. 6888, gives as one of the grounds for a new trial: "Misconduct of the jury; and when any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors."

The purpose of this rule is to prevent jurors from arriving at their verdict by any method of chance, and to require them to deliberate upon any question submitted to them, and to reach their conclusion only after such deliberation. Manifestly, this would not be done if the jurors resorted to chance to determine what the verdict should be.

The chief merit claimed for the jury system is that it requires for a verdict the combined judgment of the several members, or of a lawful majority, upon the controverted questions of fact, which can be had only after solemn deliberation. Hence a verdict arrived at by chance is not a verdict within the meaning of the law.

There are courts which hold that dividing the aggregate of the sums which each juror is willing to allow by the number of jurors, and taking the quotient as the verdict, is not a chance verdict within the meaning of this rule. In *Turner v. Tuolumne County Water Co.*, 25 Cal. 397, that court said, in passing on this statute, that where damages are to be assessed by a jury, it not infrequently happens that there is a great diversity of opinion as to the amount which should be given, and where such is the case, the verdict must necessarily be the result of mutual concessions. The jury are bound to meet upon a sum upon which their conflicting views will harmonize, and it frequently happens that this mutual sum is the average of the different sums advocated by each juror.

In *Smith v. Cheetham*, 3 Caines (N. Y.), 57, at 61, Chancellor Kent said: "If the jury cast lots for whom they shall find, it would vitiate the verdict . . . . the charge here is not that the jury cast lots whether they should find for the plaintiff or defendant, but only that in ascertaining the amount of damages they took the average sum adduced from the different opinions of each other. This has no analogy to the case of casting lots to determine by chance for whom they shall find." (See, also, *Cowperthwaite v. Jones*, 2 Dall. (Pa.) 55, 1 L. ed. 287; *Thompson v. Commonwealth*, 8 Gratt. (49 Va.) 637, to the same effect.)

The construction of the statute given in *Turner v. Tuolumne County Water Co., supra,* was disapproved in *Flood v. McClure*, 3 Ida. 587, 32 Pac. 254. But in that case it was found that the jury arrived at their verdict by agreeing that each juror should mark on a slip the amount which he was willing to allow, the several sums to be added together

and the total divided by twelve, and that the quotient should be the amount of the verdict; "*and that said verdict was arrived at in that way and in no other.*"

In *Giffen v. City of Lewiston,* 6 Ida. 231, 55 Pac. 545, it appeared by the affidavits of five of the jurors that the verdict was attempted to be arrived at in this same manner, but that the quotient arising from the division was $875, and later the verdict was fixed at $800. The court said that under these circumstances it could not very well be regarded as a chance verdict, but disapproved the method pursued by the jury in arriving at the amount.

In *Beakley v. Optimist Printing Co.,* 28 Ida. 67, 152 Pac. 212, this court concluded from the evidence that certain of the jurors were induced to agree whether the verdict should be for plaintiff or defendant by the tossing of a coin; and after the court so found the fact, necessarily the verdict had to be vacated.

In *Wright v. Union Pacific R. R. Co.,* 22 Utah, 338, 62 Pac. 317, the verdict was set aside because one of the concurring jurors claimed that he was induced to join in the verdict by an agreement of this kind made in advance, and that he assented by reason of such agreement.

A verdict is not subject to be challenged on the ground that it was a chance verdict because the jurors during the course of their deliberation, in order to compose their differences of opinion as to the amount that should be allowed, undertake to average their judgment, unless it clearly appears that before doing so they each severally agree to be bound by the result of such chance methods after such result has been reached. Sometimes jurors, after returning a verdict, are induced by the losing party to make affidavits impeaching such verdict which reflect upon their intelligence or integrity, and a verdict should only be set aside on the ground that it was arrived at by chance upon a clear showing that it is the result of chance instead of deliberation.

The fifth ground relied upon, being the eighth assignment, relates to certain hypothetical questions asked of Dr. Mat-

thews, the attending physician and surgeon at St. Luke's Hospital, who removed the gauze sponge from plaintiff's body in December, 1917. It appears from Dr. Matthews' testimony, which is corroborated by other witnesses, that Mrs. Cochran went to St. Luke's Hospital about three weeks after the birth of her child; that she had at that time an elevated temperature and a discharging fecal fistula on her right side, from which gas, pus and fecal matter were being discharged, and also a soreness or swelling of the left leg, due to phlebitis which had recently developed. After a lapse of two weeks, Dr. Matthews operated upon her, by opening the abdomen, where he found a large area of pus around the head of the colon, and a gauze sponge lying against the head of the bowel. He removed the sponge, and found that the bowel had perforations, and was thick and indurated. Among the hypothetical questions which were asked of Dr. Matthews was one as to what in his opinion was the cause of the fistula, to which he replied that in his opinion it was caused by the foreign substance in the cavity against the bowel, by the irritation of the sponge which he had removed. He was further asked for an opinion as to what caused the abscesses to form on the ovaries, to which he replied that he believed the sponge was primarily the cause of all of these pelvic complications. To all of these hypothetical questions and answers thereto appellant interposed the objection that as Dr. Matthews had not known anything about the conditions surrounding the previous operations performed, as to whether there was pus when the appendix was taken out, and whether it was gangrenous, and knew nothing about the condition of the patient at Juliaetta after such operation, this line of inquiry was incompetent, irrelevant and immaterial.

Mrs. Cochran was under Dr. Matthews' care the first time for about ten weeks, in June she returned and was again operated upon for an abscess upon the right ovary, when she was under his care for four weeks, and in September following she was returned to the hospital, at which

time the surgeon deemed it necessary to remove the left ovary and both fallopian tubes, she at this time remaining under the surgeon's care for twelve weeks. All of the hypothetical questions asked of Dr. Matthews to which objection was made were based upon the knowledge which he had gained from his treatment of the patient, and the additional facts relating to the prior history of the case and the general condition of the patient's health, as respondents claimed them to have been, which were incorporated in the hypothetical questions. The questions calling for the opinion of the surgeon, in addition to matters within his own knowledge, gained by these several operations which he performed, also fairly include the previous history of the case as respondents claimed the facts to be, and there was substantial evidence to support the claim that these hypothetical questions did fairly embrace the facts of the case as respondents' evidence showed them to be.

Appellant insists that the most serious objection to this line of interrogatories was that some of them at least called for the expert opinion of the surgeon with reference to the ultimate question for the jury to decide, that is, was this gauze sponge found by the surgeon in the abdominal cavity of this patient some weeks after the birth of the child, and removed by him, primarily the cause of the suffering and illness of Mrs. Cochran prior to its removal? It is a general rule that a party may not under the guise of hypothetical questions ask a witness to state the ultimate fact which the jury must determine, and the questions should be so framed as not to involve the necessity of a witness finding a controverted fact in order to give his opinion. That is, it should be put to the witness hypothetically whether, if certain facts testified to or shown to be within his own personal knowledge are true, he can form an opinion, and what that opinion is. The jury will then be instructed, if the truth of the fact is contested, first to consider whether the fact upon which such opinion rests is proved to their satisfaction, and if it is, then to give such weight to the

opinion resting on it as it deserves; but if the fact is not proved by the evidence, then to give the opinion no weight. (2 Jones' Commentaries on Evidence, sec. 377, p. 926.)

But the same author says, at sec. 373, that it cannot be expected that the interrogatory will include the proofs or theory of the adversary, since this would require a party to assume the truth of that which he generally denies. Each side, on an issue of fact, has its theory as to what is the true state of facts, and assumes that it can prove it to be so to the satisfaction of the jury, and so assuming, states the hypothetical questions to the experts accordingly. In such a case, the questions must be so framed as to fairly reflect the facts admitted or proved by him; and where the party's own evidence corroborates the evidence which has been introduced by the other party to the action, such question should fairly reflect all of the facts so admitted or proved by both sides. But a question should not be rejected because it does not include all of the facts, unless it thereby fails to present the case fairly. Tested by this rule, we think the hypothetical questions submitted to Dr. Matthews were not open to the objection made, and that his answers thereto were properly received.

In *Jones v. City of Caldwell*, 20 Ida. 5, 116 Pac. 110, 48 L. R. A., N. S., 119, it is said that: "A hypothetical question which contains facts that are proved or claimed to be proved by either party may be put to an expert for the purpose of obtaining his opinion upon such facts, and by so doing such expert witness does not usurp the province of the jury, as the jury is not compelled to accept the opinions of such expert against their will, but will weigh such expert opinions as other evidence is weighed by them."

In *Eastern Transp. Line v. Hope*, 95 U. S. 297, 24 L. ed. 477, it is said with reference to this subject that: "It is permitted to ask questions of a witness of this class which cannot be put to ordinary witnesses. It is not an objection, as is assumed, that he was asked questions involving the points to be decided by the jury. As an expert, he could

properly aid the jury by such evidence, although it would not be competent to be given by an ordinary witness. It is upon subjects upon which the jury are not as well able to judge for themselves as the witness that an expert, as such, is expected to testify. Evidence of this character is often given upon subjects requiring medical knowledge and science, but it is by no means limited to that class of cases.''

We cannot review in detail all of the authorities cited by appellant in support of the assignment. Some of the courts do hold that an expert witness ''should not be permitted to give his opinion upon a vital fact in the case, which it was the province of the jury to determine.'' (*Chicago City Ry. Co. v. Soszynski,* 134 Ill. App. 149, at 155, and authorities there cited.''

In all cases the question should be so framed that the witness is asked to express an opinion, which is all that he can do where the facts are not within his own knowledge. The ultimate fact is always a question for the jury. But where an opinion is given, as was done in this case, in reply to an assumed state of facts, or based on the witness' personal observation and experience with the patient, or upon both, the jury could not well conclude that the statement of such an opinion relieved them of the responsibility of determining what the ultimate facts were. The hypothetical questions propounded to Dr. Matthews and the answers given were permissible.

It is strenuously insisted that a new trial should be granted upon the errors assigned, and the consideration is urged that above and beyond the pecuniary amount awarded by the jury, the professional reputation and good name of the appellant as a physician and surgeon, which it has taken him a lifetime to build up, is at stake. We do not entertain the view that this result usually follows a verdict of this kind, or that it should do so. In view of the great number of operations performed by surgeons, the highly technical character of the work, it is greatly to the credit of the profession that comparatively few mistakes are made.

The degree of perfection and avoidance of error that a finite being may reach is limited, and there is always a possibility of failure to exercise such care and diligence as is necessary to avoid disastrous results in highly technical work of this character. The law only requires that degree of care which is ordinarily and commonly recognized as reasonable under the particular facts and circumstances of a given case. Society is greatly indebted to modern surgery, and to the skilled and eminent men who devote their lives to alleviating pain and saving life. However, where unsatisfactory results follow an operation of this character, and it is claimed that they were the direct result of failure to exercise such reasonable care as is ordinarily used by surgeons under similar conditions, and there is competent proof offered in support of such claim, the question of whether such care was used as the law requires becomes a question of fact to be determined by the jury under proper instructions.

We have examined the record, particularly the transcript of the evidence, consisting of more than three hundred pages largely devoted to expert testimony, with more than usual interest, and also the rulings of the trial court complained of and the authorities cited in support of the several assignments. Some of the rulings are more favorable to appellant than the law requires, for it would not necessarily be reversible error to inquire of a prospective juror, in a case of this kind, whether he was a stockholder in an insurance company which insures physicians and surgeons. In practically every instance where the attention of the court was called to an alleged improper remark or act of respondents' counsel, such counsel was admonished to refrain from the same, and the jury were frequently instructed to disregard the same, or some other proper admonition was given.

In view of the entire record, we do not think the errors complained of influenced the verdict to any perceptible degree. It seems clear that the respondent Mary M. Cochran

has suffered very great pain over a long period of time, that her health has been permanently injured, and that she and her husband have been to great expense, occasioned by this illness. Their claim that this was the direct result of appellant's negligence in failing to remove the gauze sponge from the incision made in her side at the time he performed the operation, before he closed the incision, was a question of fact which appears to have been properly submitted to the jury. There is evidence to support its findings, and there being no reversible error of law found in the record, the judgment of the court below should be affirmed. It is so ordered, with costs to respondents.

Rice, C. J., and Budge, McCarthy and Dunn, JJ., concur.