391 P.2d 853

Willis D. CLARK, individually, and Willis D. Clark, as guardian of the estates and persons of Hurby Lynn Clark, Kathy Sue Clark, Jerry Wayne Clark and Diana Gayle Clark, minors, Plaintiffs-Appellants, and Cross-Respondents,

v.

Lyle FOSTER and Ona Foster, Defendants-Respondents, and Cross-Appellants.

No. 9276.

Supreme Court of Idaho.

April 16, 1964.

Rehearing Denied May 19, 1964.

Murphy, Schwartz & Cunningham, Twin Falls, for appellants.

Parsons, Smith & Snow, Burley, Parry, Robertson & Daly, Twin Falls, for respondents.

McQUADE, Justice.

Plaintiffs-appellants and cross-respondents will hereinafter be referred to as appellants. Ona Foster and Lyle Foster, mother and son, are defendants-respondents and cross-appellants and will hereinafter be referred to as respondents. The late Hurby L. Clark will hereinafter be referred to as the father, and the late Juanita A. Clark will hereinafter be referred to as the mother.

On July 7, 1959, at approximately 6:00 p. m., the father was driving a 1952 Chevrolet sedan in a westerly direction on Minidoka County Highway 200 South. There were eight persons in this automobile; the father, the mother, their four children (appellants herein) and two other passengers. The automobile was proceeding westward toward the intersection of County Highway 200 South and County Highway 100 West. At the same time, respondent Lyle Foster was proceeding north on Minidoka County Highway 100 West. He was driving Ona Foster's Pontiac. The two vehicles collided at the aforementioned intersection. The father was killed instantly, the mother died shortly thereafter and the minor children suffered personal injuries as a result of the collision.

Willis D. Clark brought this action, individually and as guardian of the estates and persons of the minor appellants to recover damages allegedly sustained as a result of the negligence of the respondents. In the trial court, appellants alleged three separate and distinct causes of action; 1. for personal injuries received and medical expenses incurred by the minor appellants as a result of the accident; 2. for the wrongful death of the father, and 3. for the wrongful death of the mother. Under the third cause of action, Willis D. Clark also

sought to recover for ambulance, medical and funeral expense allegedly incurred as a result of the death of the mother.

The jury found against appellants and in favor of respondents on all three causes of action. On April 3, 1961, the trial court entered judgment upon the verdict. On April 12th, appellants moved for a new trial on their first and third causes of action. Nine grounds were listed as a basis for appellants' motion; among them was the charge that "One or more of the jurors assented to the verdicts entered by resort to determination of said verdicts by chance." I.C. § 10–602(2). Affidavits of ten of the jurors were submitted with the motion for new trial for the purpose of showing that the verdict was arrived at by chance. No counter-affidavits were filed by respondents. In the amended order filed on August 21, 1962, the trial judge granted appellants' motion for a new trial on the first cause of action and denied appellants' motion for a new trial on the third cause of action. The trial judge did not state the grounds upon which the order was made.

On October 16th, appellants filed their notice of appeal from the denial of their motion for a new trial on the third cause of action and from the judgment entered on the jury verdict. Subsequently, respondents filed their cross-appeal from the amended order granting appellants a new trial on their first cause of action.

The trial court has wide discretion in ruling upon a motion for new trial and where a new trial has been granted, the record will be liberally construed in support of the order. Coast Transport, Inc. v. Stone, 79 Idaho 257, 313 P.2d 1073 (1957).

As noted previously, one of the grounds assigned by appellants as a basis for their motion for new trial was that one or more of the jurors had assented to the rendition of a verdict by chance in that they had agreed to be bound by a quotient verdict. I.C. § 10–602(2). Appellants alleged that the technique employed was that each juror placed his opinion of the degree or percentage of negligence attributable to the respondent Lyle Foster on a piece of paper. The foreman added up the total of percentage figures thus obtained, divided by twelve, and the jury thus determined that the respondent Foster was only 47% responsible for the collision and ensuing damages. In conformance with their prior agreement that if the respondent Foster was over 50% negligent the verdict would be in favor of appellants, the jury then ruled for respondents on all three causes of action. We do not recognize comparative negligence in Idaho. Cook v. Lammy, 73 Idaho 445, 253 P.2d 244 (1953).

This court has previously held that a quotient verdict is one obtained by "a resort to the determination of chance," and is invalid under I.C. § 10–602(2). Butland

v. City of Caldwell, 51 Idaho 483, 6 P.2d 493 (1931); Cochran v. Gritman, 34 Idaho 654, 203 P. 289 (1921); Newman v. Great Shoshone Etc. Power Co., 28 Idaho 764, 156 P. 111 (1916); Giffen v. City of Lewiston, 6 Idaho 231, 55 P. 545 (1898); McDonald v. Great Northern Railway Co., 5 Idaho 8, 46 P. 766 (1896); Flood v. McClure, 3 Idaho 587, 32 P. 254 (1893).

Respondents contend that we are not dealing with a quotient verdict in the instant case. They argue first of all that in the cases noted hereinabove the jury used a quotient for the sole purpose of determining the amount of money to be awarded a party in a particular action. They point out that in the instant case the quotient was not used to determine damages but to determine the liability of the parties involved.

Respondents have correctly pointed out that the procedure used by the jury in the instant case can be factually distinguished from what is traditionally known as the quotient verdict. It appears, however, that the evils are fully as inherent in the instant situation as they are when a jury uses a quotient to determine the amount of damages. To illustrate, in Flood v. McClure, supra, 3 Idaho at page 594, 32 P. at page 256, the court, quoting from a Nevada case, stated:

"* * * * 'The cases where verdicts have been set aside proceed upon the theory that, if upheld, where jurors bind themselves in advance, it might lead to great injustice, because it would enable one inveterate juror, by marking down a very large or small sum, to produce an average and procure a verdict for an amount which would be unreasonable, and at utter variance with the judgment of other jurors. This would be a chance verdict, and, whenever such misconduct is properly shown, the verdict ought to be set aside. * * *' "

The statute itself does not distinguish between the use of methods of chance for one purpose and their use for another. I.C. § 10–602(2) states:

"The former verdict or other decision may be vacated and a new trial granted * * * when any one or more of the jurors have been induced to assent to *any* general or special verdict, or to a finding on *any* question submitted to them by the court, by a resort to the determination of chance, * * *." (Emphasis supplied) See also Beakley v. Optimist Printing Co., Ltd., 28 Idaho 67, 152 P. 212 (1915).

The fact that a quotient was used here for a purpose other than determining the amount of damages is irrelevant:

"* * * The clear intent of the law is that the verdict shall be the result of intellectual discussion, deliberation and conviction by and of the jury, * * * If the rights of litigants are

to be determined by juries by such methods, they had as well determine their own rights by drawing lots or tossing up a piece of money, and not pretend to submit their cases to juries for their careful deliberation and for the result of their best judgment. * * *" Flood v. McClure, supra, 3 Idaho at pp. 594–595, 32 P. at p. 256.

■ Respondents next contend that the jury's decision in the instant case cannot be called a quotient verdict unless appellants can establish that the jurors agreed in advance to be bound by the results of the average compiled by the foreman. This is a correct statement of the law. As we pointed out in Cochran v. Gritman, supra, 34 Idaho at page 672, 203 P. 289 at page 295:

> "A verdict is not subject to be challenged on the ground that it was a chance verdict because the jurors during the course of their deliberation, in order to compose their differences of opinion as to the amount that should be allowed, undertake to average their judgment, unless it clearly appears that before doing so they each severally agree to be bound by the result of such chance methods after such result has been reached. * * * a verdict should only be set aside on the ground that it was arrived at by chance upon a clear showing that it is the result of chance instead of deliberation."

■ The uncontroverted affidavits submitted in this cause, however, establish that the jury verdict was arrived at by resort to chance instead of deliberation. Juror Floyd D. Mason stated in his affidavit;

> "* * * *We agreed to average the percentage of the negligence and give the verdict in favor of the one who had the least negligence.* We voted for Foster by putting a percentage on a piece of paper and gave the paper to the Foreman. He averaged it by adding the percentage up and dividing by 12. This was the only way we were able to come to an agreement. * *" (Emphasis supplied)

Juror Dale C. Stoller stated in his affidavit;

> "* * * That the issue of negligence was discussed by members of the jury at great length and in order to bring the matter to a head and to decide the issue of negligence, it was decided that each juror should place on a slip of paper his opinion as to whether Lyle Foster was negligent and in some degree responsible for the accident; that this was done and the twelve slips were collected and added by myself and divided by twelve; That the percentage written on the slips varied from a low of zero recorded on one slip to a high of 60% recorded on sev-

eral slips; That to the best of my recollection the average amount of negligence or degree of responsibility thus placed on Lyle Foster was 47%; *That it was thus established to the satisfaction of a majority of the jurors that the negligence or blame for the accident on the part of Hurby Clark was greater than the negligence or blame for the accident on the part of Lyle Foster * * *.*" (Emphasis supplied)

Juror John E. Drew stated in his affidavit;

*"* * * it was thereafter finally agreed that the question of whether the defendant was at fault or to blame for the collision would be determined by each individual juror placing his opinion of the degree of blame or negligence of the defendant upon a slip of paper; * * * That the issue of negligence was arrived at in the manner above set forth and in that manner alone; * * *.*" (Emphasis supplied)

Juror Edward D. Tyler stated in his affidavit;

"* * * That in order to determine whether the plaintiffs had proved their case in accordance with the instructions given, it was necessary to determine whether the plaintiffs had proved Lyle Foster 50% or more responsible for the accident; *This fact was deter-mined by each juror placing on a slip of paper his opinion of the degree or percentage of blame or negligence to be placed upon Lyle Foster* and after this was done the slips were added up by the Foreman and divided by twelve; *It was thus determined that Lyle Foster was less than 50% to blame for the accident; That the issue of negligence was arrived at in the manner above set forth * * *.*" (Emphasis supplied)

Juror William R. Rickert stated in his affidavit;

"* * * That to arrive at the issue of negligence the jury considered it necessary to determine the degree of negligence of Lyle Foster to determine whether the plaintiffs had established the burden of proof of negligence; *That is was agreed that the jury would determine this issue of negligence by writing on individual slips of paper* each juror's opinion of the percentage of blame or negligence to be placed on Lyle Foster and that an average would be taken; * * * *That the issue of negligence was arrived at in the manner above set forth.*" (Emphasis supplied)

Juror La Rena Moncher stated in her affidavit;

"* * * *it was finally agreed* that the jury would determine the issue of negligence of Lyle Foster by writing

on individual slips of paper each juror's opinion of the percentage of blame or negligence to be placed on Lyle Foster and that an average would be taken; * * * That *to the best of my knowledge the jurors agreed that if the percentage of negligence arrived at as above stated showed Lyle Foster to be 51% or more negligent, verdict would be for plaintiffs and if the percentages of negligence arrived at as above stated showed Lyle Foster to be 50% or less negligent, verdict would be for defendants; * * *.*" (Emphasis supplied)

Juror Reinhold Bossert apparently felt that he was bound by the results of the procedure followed by the jury for although he signed the verdict, he stated in his affidavit that, " * * * it was my opinion then and is now that Lyle Foster was 60% to blame for the collision and I wrote down 60% on my slip; * * *."

Respondents rely heavily upon the statement in juror Bossert's affidavit that " * * we voted on the final verdicts by raising our hands." There is, however, nothing particularly significant about this statement. In the first place, it is contradicted by the affidavits of most of the other jurors. Secondly, the vitiating fact is the agreement in advance to abide by the quotient result. Butland v. City of Caldwell, supra, Cochran v. Gritman, supra.

The remaining affidavits are inconclusive. However, appellants have shown that the misconduct of the jury deprived them of a fair trial. This being the case, the trial judge correctly granted a new trial on appellants' first cause of action; respondents' cross-appeal is denied. The trial court erred, however, when it failed to grant appellants a new trial on their third cause of action; the misconduct of the jury vitiated the entire verdict, not just one cause of action.

As noted earlier, appellants based this appeal on both the judgment and the denial of their motion for a new trial. Appellants failed to move for a new trial on their second cause of action and respondents contend (relying on I.C. § 13–201) that this court is without jurisdiction to entertain any questions relating to this cause of action on appeal. To summarize their position, I.C. § 13–201 states that an appeal from a final judgment must be made sixty days after its entry; provided, however, that the running of the time for appeal is terminated by a timely motion for a new trial. Respondents insist that as appellants did not move for a new trial on the second cause of action the time for appeal expired as to that particular facet of their case.

Respondents' argument would be tenable were this a separable judgment; that is, if there were in essence a final judgment as to the first cause of action, a final judg-

ment as to the second cause of action and a final judgment as to the third cause of action. If such were the case, appellants would have the right to appeal from any of the three judgments. There was, however, only one final, indivisible judgment entered in the trial court and there is but one final judgment to be considered on this appeal. As appellants' motion for a new trial was timely, the running of the time of appeal from the final judgment was terminated. See Gerry v. Johnston, 85 Idaho 226, 378 P.2d 198 (1963).

As the judgment of the court was based upon the jury verdict, it must be reversed and set aside for reasons given above. As appellants are granted a new trial on all three causes of action we must determine all the questions of law involved in the case which have been properly presented and are necessary to its final determination. I.C. § 1–205.

The statute under consideration in this case is I.C. § 5–311 which provides:

"Action for wrongful death.—When the death of a person not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just."

Relative to the above statute, the first question presented is whether or not the children could recover for the wrongful death of their father if he was contributorily negligent. Appellants insist that under a correct interpretation of the statute, the father's contributory negligence would be irrelevant in an action by his heirs to recover for his wrongful death. The substance of their argument is that the statute does not appear to prevent recovery by the heirs in situations in which the decedent is contributorily negligent.

It is true that I.C. § 5–311 does not contain the proviso common to most wrongful death statutes allowing the heirs to maintain an action for wrongful death only, "Whenever the wrongful act would have entitled the person injured to maintain an action if death had not ensued." However, for sixty years this jurisdiction and others have uniformly held that the statute should be interpreted as if it contained the above qualification. Northern Pacific Ry. Co. v. Adams, 192 U.S. 440, 24 S.Ct. 408, 48 L.Ed. 513 (1904); Sprouse v. Magee, 46 Idaho 622, 269 P. 993 (1928); Helgeson v. Powell, 54 Idaho 667, 34 P.2d 957 (1934); Russell v. Cox, 65 Idaho 534, 148 P.2d 221 (1944); Hooton v. City of

Burley, 70 Idaho 369, 219 P.2d 651 (1950). It is, therefore, well established in Idaho that the contributory negligence of a deceased is a bar to recovery in an action for his wrongful death under I.C. § 5–311.

Moreover, it is to be noted that California, Washington, Montana and Utah, under substantially the same statutory provisions, have consistently held that an heir cannot recover in a wrongful death action unless the deceased himself could have recovered had he survived. See: Buckley v. Chadwick, 45 Cal.2d 183, 288 P.2d 12, 289 P.2d 242 (1955); Ostheller v. Spokane & I. E. R. Co., 107 Wash. 678, 182 P. 630 (1919); Hart v. Geysel, 159 Wash. 632, 294 P. 570 (1930); Ryan v. Poole, 182 Wash. 532, 47 P.2d 981 (1935); Upchurch v. Hubbard, 29 Wash.2d 559, 188 P.2d 82 (1947); Johnson v. Ottomeier, 45 Wash.2d 419, 275 P.2d 723 (1954); Melville v. Butte-Balaklava Copper Co., 47 Mont. 1, 120 P. 441 (1913); Maronen v. Anaconda Copper Mining Co., 48 Mont. 249, 136 P. 968 (1913); Van Wagoner v. Union Pac. R. Co., 112 Utah 189, 186 P.2d 293 (1947).

The final question presented by this appeal is whether or not the children could recover under I.C. § 5–311 for the wrongful death of their mother if their father was contributorily negligent.

In Sprouse v. Magee, supra, the wife died as a result of the alleged malpractice of the defendant doctor. The husband sued to recover damages and the defendant alleged that negligence on the part of the husband had contributed directly to the death of the wife. The husband moved to strike the defense of contributory negligence on the grounds that whether or not he was at fault was immaterial. This court observed, however, that if the wife had survived, the husband would have been a necessary party in any action for damages, and, as the damages would be community property, the defense of contributory negligence could be interposed.

As pointed out by the case itself, the decision in Sprouse v. Magee, supra, is dictated by the combination of community property principles and the wrongful death statute. For it has long been accepted in Idaho that tort damages are not separate property, but a part of the community belonging to both husband and wife. Swager v. Peterson, 49 Idaho 785, 291 P. 1049 (1930); Labonte v. Davidson, 31 Idaho 644, 175 P. 588 (1918); Giffen v. City of Lewiston, 6 Idaho 231, 55 P. 545 (1898). In an action for personal injury it appears to be clear that the contributory negligence of one spouse will bar recovery by the other. Sprouse v. Magee, supra. If the wife is allowed to recover, the husband, who had contributed to the injury, would be legally entitled to a share of the proceeds; such recovery would violate the

rule that "one should not be allowed to profit from his own wrongs."

■ The above principles must be applied in a wrongful death action because of the requirement noted hereinbefore that the heirs cannot recover damages in an action for wrongful death unless the decedent himself could have recovered. Thus in Sprouse v. Magee, the wife was considered by the court as if she had survived the negligence of the defendant doctor to determine if her husband would be entitled to recover. As we pointed out earlier, the defense of contributory negligence was held to be valid in light of the fact that if the wife had survived, the husband would have been entitled to share in proceeds partly occasioned by his own wrongdoing.

Appellants would have us overrule Sprouse v. Magee. Such would seem to be unnecessary; herein no recovery is sought by either spouse. Furthermore, even by accepting the reasoning in that case, we must conclude that the children would not, in this instance, be barred from recovering damages for the wrongful death of their mother even if their father was contributorily negligent.

■ If the mother in the instant case had survived the accident, she would not have been barred by the defense of contributory negligence on the part of the father in an action to recover for her own injuries. This is simply because any pro-ceeds she might recover could not possibly inure to the benefit of the father; they would be her separate property. The community ceased to exist upon the death of the father. Thus, neither the father nor his estate could share in the proceeds from any action which might have been prosecuted by the mother.

In Flores v. Brown, 39 Cal.2d 622, 248 P.2d 922 (1952), the Flores family was involved in a collision with a truck in which Mr. Flores and a son were killed and Mrs. Flores and a daughter were injured. Mrs. Flores brought an action for her own personal injuries and for the wrongful death of her son. Defendants plead contributory negligence. After discussing the reason for the rule "imputing" the negligence of one spouse to the other, the California court stated 248 P.2d at pp. 926–927:

"Mr. Flores died in the same accident in which his wife was injured. To allow her to recover for her personal injuries will in no way enrich Mr. Flores or those who might take through him. Similarly, there will be no unjust enrichment if Mrs. Flores is allowed to recover for the wrongful death of her son. * * *

" * * * When the husband is dead, not only is the reason for the rule imputing his negligence to his wife gone, but to apply it defeats its own purpose. It is but a windfall to a defend-

ant who negligently injures a wife or causes the death of a minor child that recovery may be barred because the wife's husband was also negligent. Although allowing the negligent defendant to escape liability has been considered a lesser evil than allowing the negligent spouse to profit from his own wrong, surely the former evil may not be balanced by the latter when the latter is no longer present. * * *"

As was the case in Flores v. Brown, the need to "impute" the negligence of the father to the mother vanished with the death of the father. Therefore, the rationale does not support a holding that the contributory negligence of the father would be a valid defense in an action for the wrongful death of the mother. See also Bruton v. Villoria, 138 Cal.App.2d 642, 292 P.2d 638 (1956); Carroll v. Beavers, 270 P.2d 23 (Cal.App., 1954); Barton v. Messmore, 122 Cal.App.2d 813, 265 P.2d 949 (1954); Mitchie v. Calhoun, 85 Ariz. 270, 336 P.2d 370 (1959); Missouri-Kansas-Texas R. Co. v. Hamilton, 314 S.W.2d 114 (Tex.Civ.App., 1958).

The judgment on the verdict is reversed. The cause is remanded for a new trial on all three causes of action.

Costs to appellants.

KNUDSON, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.